Richard P. Tricker (SBN 101460)
Rachel D. Dardashi (SBN 292126)
**WINGET SPADAFORA & SCHWARTZBERG LLP**
1900 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Telephone:  310.836.4800
Email: tricker.r@wssllp.com;
dardashti.r@wssllp.com

Mark A. Harmon (SBN 1041482)
*Pro Hac Vice Pending*
**HODGSON RUSS LLP**
650 Third Avenue, Suite 2300
New York, NY 10158
Telephone: 212.751.4300
Email: mharmon@hodgsonruss.com

Attorneys for Defendant
PACIFIC STOCK TRANSFER
COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BODIE INVESTEMENT GROUP, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>MARANI BRANDS, INC., a Nevada corporation, PAUL STRICKLAND, a Washington citizen; and PACIFIC STOCK TRANSFER, INC., a Nevada corporation,<br><br>Defendants. | CASE NO. 8:17-cv-01946-JLS-JDE<br><br>**DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(B)(1), 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT**<br><br>Complaint Filed: November 2, 2017<br><br>Date: March 16, 2018<br>Time: 2:30 p.m.<br>Ctrm.: 10A |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.    INTRODUCTION ...............................................................................1

II.   FACTS ALLEGED IN THE COMPLAINT ...................................2

III.  PLAINTIFF FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED ..................................................5

    A.    Standard of Review ....................................................................5

    B.    Plaintiff Fails to State A Claim Against Pacific For Failure to Register Plaintiff's Stock ......................................................5

        1.    Plaintiff's Claim for Violation of NRC 104.8401 and 104.8407 Fails Because the UCC Does Not Require Transfer Agents to Issue New Stock ........................8

    C.    Plaintiff Fails to State A Claim Under Section 10(b) of the Securities Exchange Act As to Pacific ...................................9

        1.    Plaintiff Has Not Met The Heightened Pleading Standard for "Scienter" ..............................................9

        2.    Pacific's Request For Supporting Documentation Does Not Give Rise to An Inference of Scienter ......................10

        3.    Pacific's Acceptance Of Instructions To Issue Shares To Tangiers Does Not Demonstrate Scienter ................................12

        4.    The Fact That Pacific Did Not Issue Shares To Marani Does Not Give Rise To An Inference Of Scienter .............................14

    D.    Plaintiff Failed To State A Claim For Fraud As To Pacific...............15

        1.    Plaintiff Failed Adequately To Plead That Pacific Made Any Misrepresentations ................................................15

        2.    Plaintiff Failed to Plead Reasonable Reliance on Pacific's Alleged Misrepresentation .......................................17

| | | | | |
|---|---|---|---|---|
| | | 3. | Plaintiff Failed to Adequately Plead Scienter Or Intent To Defraud | 18 |
| | E. | | Plaintiff Fails To State A Claim for Aiding And Abetting Breach Of Fiduciary Duty | 18 |
| | F. | | Plaintiff's Remaining Tort Claims Against Pacific Fail Because Pacific Is An Agent of A Disclosed Principal | 18 |
| | G. | | Plaintiff's Dangling Claim For Declaratory and Injunctive Relief Should Be Dismissed As Against Pacific | 19 |
| IV. | | | THERE IS NO BASIS UPON WHICH JURISDICTION MAY BE EXERCISED | 19 |
| | A. | | There Is No Subject Matter Jurisdiction | 19 |
| | B. | | There Is No Basis Upon Which Personal Jurisdiction Can Be Exercised | 20 |
| | | 1. | Pacific Fails to Allege Facts Upon Which Specific Jurisdiction May Be Based | 20 |
| | | 2. | Plaintiff Fails to Allege Facts Upon Which General Jurisdiction May Be Based | 22 |
| V. | | | CONCLUSION | 23 |

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

## **TABLE OF AUTHORITIES**

**Cases**

Affiliated Ute Citizens of Utah v. United States
    406 U.S. 128 (1972)............................................................................13

Agricultural Ins. Co. v. Superior Court
    70 Cal.App.4th 385 (Cal. App. 2 Dist. 1999)..................................15

American Securities v. Transfer Pantheon Industries
    871 F. Supp. 400 (D. Colo. 1994) ....................................................8

Aquila, Inc. v. Superior Court
  148 Cal. App. 4th 556 (Cal. App. 4th Dist. 2007) ...........................22

Brayton Purcell LLP v. Recordon & Recordon
    606 F.3d 1124 (9th Cir. 2010) ........................................................21

Buckeye Boiler Co. v. Superior Court of Los Angeles County
    71 Cal. 2d 893 (Cal. 1969) ...............................................................23

Burger King Corp. v. Rudzewicz
    471 U.S. 462 (1985).................................................................... 21, 22

Dillon v. Militano
    731 F.Supp. 634 (S.D.N.Y. 1990) ............................................. 14,15

Dura Pharmaceuticals, Inc. v. Broudo
    544 U.S. 336 (2005)..........................................................................9

Faturik v. Woodmere Securities, Inc.
    442 F. Supp. 943 (S.D.N.Y. 1977) ................................................15

Goehring v. Superior Court
    62 Cal. App. 4th 894 (Cal. App. 4th Dist. 1998)...................... 20,22

Gordon Bldg. Corp. v. Gibraltar Sav. & Loan Ass'n
    247 Cal.App.2d 1(Cal.App. 2 Dist. 1966).......................................7

Guilfoyle v. Olde Monmouth Stock Transfer Co.
   335 P.3d 190 (Nevada 2014) .........................................................................8

Hackford v. First Sec. Bank of Utah, N.A.
   1983 WL 20180, at *4 (10th Cir. Jan. 31, 1983)...........................................13

Helicopteros Nacionales de Colombia, S.A. v. Hall
   466 U.S. 408 (1984)........................................................................... 20, 23

Keshish v. Allstate Insurance Company
   2012 WL 12887075, at *4 (C.D.Cal., Oct. 19, 2012) ...................................19

Mears v. Crocker
   84 Cal.App.2d 637 (Cal.App. 1st Div. 1948)...................................................5

Mirkin v. Wasserman
   5 Cal.4th 1082 (Cal.,1993) ...........................................................................17

Namer v. Bank of America, N.A.
   2017 WL 1180193 (S.D.Cal., March 30, 2017) ............................................18

Perkins v. Benguet Consol. Mining Co.
   342 U.S. 437 (1952).......................................................................................23

Philipson & Simon v. Gulsvig
   154 Cal.App.4th 347 (Cal.App. 4 Dist.,2007)...............................................17

PM Group, Inc. v. Stewart
   154 Cal.App.4th 55 (Cal.App. 2 Dist.,2007)..................................................19

Reyos v. U.S.
   431 F.2d 1337 (10th Cir. 1970) .....................................................................13

Rio Properties, Inc. v. Rio Int'l Interlink
   284 F.3d 1007 (9th Cir. 2002) .......................................................................20

SEC v. CMKM Diamonds, Inc.
   729 F.3d 1248 (9th Cir. 2013) .......................................................................11

Tellabs, Inc. v. Makor Issues & Rights, Ltd.
   551 U.S. 308 (2007)............................................................................ 5, 9, 10

Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica

    614 F.2d 1247 (9th Cir. 1980) ................................................................ 21, 22

**Statutes**

15 U.S.C. § 78u–4(b)(2) ..........................................................................................9

28 U.S.C. § 1331 ...................................................................................................19

28 U.S.C. § 1367(a) ..............................................................................................20

Cal. Civ. Proc. Code § 410.10 .............................................................................20

M.G.L. c. 106, § 8-115, cmt. 5 .............................................................................13

NRC § 104.8401 ..............................................................................................6, 8

NRC § 104.8407 ..............................................................................................6, 8

**Rules**

Article 8 of the Uniform Commercial Code ........................................................2, 8

Fed. R. Civ. P. 12(b)(6).........................................................................................5

SEC Rule 10b-5 ......................................................................................................9

Section 10(b) of the Securities Exchange Act ............................................. 1, 9, 10

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on March 16, 2018 at 2:30 p.m., or as soon as thereafter as this Motion may be heard, in the courtroom of the Honorable Josephine L. Staton, located at 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 10A, Defendant Pacific Stock Transfer Company, incorrectly sued as Pacific Stock Transfer, Inc., ("Pacific"), will and hereby does move the Court for an Order dismissing the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

The Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Kevin Kopaunik, filed concurrently herewith, the attached exhibits, all pleadings on file in this Action, and upon such oral and documentary evidence as may be introduced at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 5, 2018.  The Parties were unable to reach a resolution which would eliminate the need for this Motion.

**WINGET SPADAFORA &
SCHWARTZBERG LLP**

Dated: February 15, 2018        By:     _s/Richard P. Tricker_
Richard P. Tricker
Rachel D. Dardashti

Attorneys for Defendant
PACIFIC STOCK TRANSFER
COMPANY

DEFENDANT PACIFIC STOCK TRANSFER, INC.'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Bodie Investment Group, Inc. ("Plaintiff") invested $100,000 in defendant Marani Brands, Inc. ("Marani"), a company whose shares are publically traded, by purchasing a note convertible into shares of Marani's common stock. Hoping to reap a $1,000,000 return on a $100,000 investment and benefit from an unexpected and unexplained surge in the market for shares of Marani stock, Plaintiff sought to obtain the issuance of 177,000,000 shares of Marani common stock (the "Shares"). Pacific, the transfer agent for Marani, first received notice of Plaintiff's request on October 26, 2017. But Pacific, the disclosed agent for Marani, had no direct contractual relationship to Plaintiff and therefore requested Marani's authorization to comply with Plaintiff's request. Marani did not authorize the issuance and, within days, Plaintiff filed this action against Marani to compel its compliance with Plaintiff's request. Now that this Court has declined to issue a preliminary mandatory injunction, Plaintiff has joined Pacific as a defendant and seeks an award of damages against it.

Plaintiff's amended complaint (the "Complaint"), however, fails to state a cause of action against Pacific and fails to provide a basis for personal jurisdiction over Pacific. Each of the Complaint's causes of action asserted against Pacific is defective as a matter of law for at least the following reasons: Plaintiff's First Claim for Relief asserted under Section 10(b) of the Securities Exchange Act and Rule 10b-5 does not allege a strong inference of scienter on the part of Pacific. It is at least equally plausible that Pacific's conduct was simply consistent with its role as Marani's transfer agent, performing ministerial acts for a disclosed principal; Plaintiff's Second Claim for Relief for fraud and deceit does not allege that Plaintiff relied to its detriment on any representation made by Pacific. In fact, the only factual statements made to Plaintiff by Pacific were completely accurate; Plaintiff's Eighth Claim For Relief fails because the statute on which it is based,

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

Article 8 of the Uniform Commercial Code, only applies to existing shareholders. Plaintiff was not a shareholder of Marani to whom Pacific owed any duty. To the contrary, it was seeking an issuance of new shares which would increase the number of shares authorized and issued, diluting those shares already issued and in the marketplace; and Plaintiff's remaining state law causes of action are ineffective against an agent for a disclosed principal.

## II.   FACTS ALLEGED IN THE COMPLAINT

Plaintiff alleges that in 2010 it invested $100,000 into Marani by purchasing a note convertible into shares of Marani common stock. Complaint ¶ 11, Exhibit 1. In 2014, presumably based on a dispute respecting that investment, Plaintiff commenced an action against Marani that was resolved by their entry into a settlement agreement on or around November 25, 2014. Complaint ¶ 12. The settlement agreement entitled Plaintiff to, among other things, convert the debt obligation into shares of Marani so long as the value of those shares did not exceed $1,000,000. Complaint ¶ 13, Exhibit 2. It is not alleged that Pacific was a party to the settlement agreement or to any agreement resulting from the settlement. Although it was contemplated between Plaintiff and Marani that a reserve of Marani shares would be created to permit debt conversions, Marani had an insufficient number of shares authorized but unissued. As a consequence, Pacific did not commit to establishing a reserve of shares for Plaintiff and no formal reserve was created. Instead, an oral understanding was reached between Marani and Plaintiff pursuant to which the settlement was concluded. Complaint ¶ 13(e).

For the next three years, Plaintiff did not seek to obtain an issuance of Marani shares. In October 2017, however, noticing an extraordinary spike in the trading volume and price of Marani shares, Plaintiff submitted a request to convert $13,275 of interest due into 177,000,000 shares. Complaint ¶¶ 15, 16; Exhibits 3 and 8.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

Plaintiff first contacted Pacific on Thursday, October 26, 2011.  Complaint ¶ 20, Exhibit 3.  Recognizing that Pacific had not signed any agreement obligating Pacific to reserve or issue shares on the instruction of Plaintiff, it instead relied on the oral understanding with Marani's prior management as a sufficient basis for Pacific to honor the conversion request.  In an email sent on Friday, October 27, 2011, Jack Bodenstein, on behalf of Plaintiff, wrote:

> Here is the TA letter which was supposed to be given to you to sign, not sure why it never happened. In any event, here there is a signed letter asking you to reserve the 200mm shares. The reason it was only 200mm shares is that margrit (sic) had said that at the time of the settlement, she only had available 200 mm shares and the rest she would give us in reserve later. This should be good for the 177,000,000 shares.

Complaint Exhibit 8.

Pacific responded promptly and advised Plaintiff that it would need authorization from its principal, Marani, before it could issue new shares. Complaint ¶ 21, Exhibit 8.  A Pacific employee wrote:

> Since Margrit is no longer with the Company, we will need the irrevocable to be signed by Paul Strickland.
>
> In addition, we will need the following, templates attached:
>
> > * ITAI in PST's format
> >
> > * Memorandum of Understanding
> >
> > * Board Resolution.

Id.  Plaintiff does not allege that it provided the requested documentation or that it provided any response to Pacific supporting its present position asserted in the Complaint that no additional documentation was required.  Complaint ¶ 21.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

On Monday October 30, 2017, Plaintiff reached out to Pacific to request the number of Marani shares that were outstanding.  The email did not further address the question of obtaining Marani's consent to the issuance.  Complaint ¶ 25, Exhibit 9.  Plaintiff alleges that Pacific responded to the request by misrepresenting that of the 7 billion shares authorized, only 2 billion shares were outstanding or reserved.  Id.  In fact, Pacific's response accurately responded to Plaintiff's request and advised that of the 7[1] billion shares authorized, just under 1.8 billion shares were issued.  Plaintiff had not requested information regarding share reserves, and Pacific did not provide any such information.[2]  Plaintiff alleges that, also on October 30, 2017, defendant Paul Strickland ("Strickland"), Marani and Pacific entered into an agreement obligating Pacific to issue shares to Tangiers upon Tangiers' demand.  Complaint ¶ 26.  Plaintiff alleges that Pacific demanded additional documentation from Plaintiff on October 31, 2017 and November 1, 2017.  Complaint ¶¶ 27, 28, 29.

Plaintiff's allegations against Pacific begin with contact made on Thursday, October 26, 2017 and end with an email chain dated Wednesday, November 1, 2017 – less than one full week later.  During this time period, the Complaint further alleges that Plaintiff contacted Marani and Strickland for information regarding the viability of issuance of the Shares on October 26, October 27, October 30, October 31, and November 1, 2017.  Complaint ¶¶ 16, 17, 18, 22, 23, 27, 29.  On November 2, 2017, Plaintiff filed the initial complaint in this action.

---

[1] Public records available from the Nevada Secretary of State reveal that Marani increased the number of its shares authorized for issuance from 2 to 7 billion in a filing made on October 25, 2017.  This increase coincides with Marani's transaction with Tangiers and the creation of a reserve in its favor.

[2] The reference to 113,879,010 Restricted would be to issued shares that were subject to resale restrictions and could not be sold or transferred absent a demonstration that they were exempt from registration requirements or other restrictions on sale.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

## III. **PLAINTIFF FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED**

### A. **Standard of Review**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.,</u> 551 U.S. 308, 322 (2007) (internal citations omitted). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Id</u>. at 322 (internal citations omitted).

### B. **Plaintiff Fails to State A Claim Against Pacific For Failure to Register Plaintiff's Stock**

Pacific is the stock transfer agent for Marani, the issuer of securities that are the subject of this litigation.  As the name implies, a transfer agent such as Pacific is an agent of its principal – here Marani, a company whose shares are publicly traded.  Transfer agents perform the ministerial tasks of maintaining the shareholder records for companies, registering transfers of ownership of existing securities when presented in good order, and issuing new securities in accordance with instructions and directions it receives from its principal, the issuer, when compliant with federal securities laws.  Transfer agents must register with and are subject to oversight by the Securities and Exchange Commission and are viewed by the Commission as gatekeepers responsible for monitoring compliance with federal securities laws in the issuance of shares to the public.

Historically, transfer agents did not owe obligations to shareholders and were not held liable for nonfeasance.  <u>See, e.g.,</u> <u>Mears v. Crocker</u> 84 Cal.App.2d 637 (Cal.App. 1st Div. 1948).   The adoption of Article 8 of the Uniform Commercial Code created and imposed novel and limited obligations on transfer agents owed to shareholders of the companies for whom

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

they act. <u>See</u> NRC § 104.8407, Official Comment ("Transfer agents, registrars and the like are here expressly held liable to both the issuer and the owner for wrongful refusal to register a transfer as well as wrongful registration of a transfer in any case within the scope of their respective functions where the issuer would itself be liable. Those cases which have regarded these parties solely as agents of the issuer and have therefore refused to recognize their liability to the owner for mere non-feasance, i.e., refusal to register a transfer, are rejected."). Specifically, the UCC requires that a transfer agent register the *transfer* of securities under certain conditions. <u>See</u> NRC § 104.8401 ("If a certificated security in registered form is presented to an issuer with a request *to register transfer* or an instruction is presented to an issuer with a request *to register transfer* of an uncertificated security, the issuer shall register the transfer as requested if" seven preconditions are met.) (emphasis added).

Critically, and as specifically relevant to Plaintiff's claim in Count 8 of this action, nothing in the UCC obligates transfer agents to issue new securities or imposes liability on them for the failure to effect an issuance of new securities. There is a fundamental difference between registering a transfer of existing securities and issuing new securities. Transferring registration of ownership of issued and outstanding securities permits existing shareholders to effect sales or gifts of their existing securities to a new shareholder. Issuing new securities creates a new equity interest and increases the number of outstanding securities of an issuer, thereby diluting the pool of preexisting securities. The UCC inherently acknowledges this distinction in the limited scope of its mandate: while the UCC commands the registration of a transfer of securities presented in good order, it does not in any way obligate transfer agents to issue new securities. Any obligation of a transfer agent to issue new securities is owed only to the issuer/principal and only pursuant to a contract.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

Recognizing that transfer agents do not have a legal obligation to would-be shareholders to issue new securities, holders of convertible debentures frequently request, as did Plaintiff in this action, that the issuer and transfer agent execute written irrevocable transfer agent instructions.  Such irrevocable instructions create contractual obligations between the transfer agent and the holder of the convertible debenture that do not exist in common law or by statute, obligating the transfer agent to issue new securities.  Explained another way, the execution of the irrevocable instruction letter creates privity between the agent and the holder of the convertible debenture that would not otherwise exist.  See, e.g., Gordon Bldg. Corp. v. Gibraltar Sav. & Loan Ass'n, 247 Cal.App.2d 1, 8 (Cal.App. 2 Dist. 1966) ("A contract made solely for the benefit of the contracting parties cannot be enforced by a stranger or one who stands to benefit merely incidentally by its performance.")  Thus, in the event that the issuer breaches its obligations to honor a party's convertible debenture, that party may seek relief directly from the transfer agent which is contractually bound by the irrevocable instructions to honor the conversion requests of the holder.

Here, Plaintiff invested in Marani in exchange for a convertible promissory note by which Plaintiff allegedly had the right to convert the principal amount of the note, plus interest, into shares of Marani common stock.  Complaint ¶ 11. While Plaintiff sought irrevocable transfer agent instructions, the Complaint and incorporated documents make it clear that Pacific never signed the irrevocable instructions, and did not enter into an agreement with Plaintiff.  Complaint Exhibits 3, 5, 8.

Plaintiff does not, because it cannot, allege that Pacific was a party to the Settlement Agreement or the irrevocable transfer agent instructions.  Plaintiff does not, because it cannot, allege that Pacific owes Plaintiff any contractual obligations.  As discussed below, Pacific does not owe to Plaintiff, as a matter of law, any common law or statutory obligation to honor Plaintiff' conversion

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

requests and issue new securities to it.  As such, Plaintiff's claims against Pacific should be dismissed.

        *1.*     *Plaintiff's Claim for Violation of NRC 104.8401 and 104.8407 Fails Because the UCC Does Not Require Transfer Agents to Issue New Stock*

Count 8 alleges that that Pacific violated its obligations under NRC §§ 104.8401 and 104.8407.  As stated above, the UCC obligates issuers of securities and their transfer agents, to register the ***transfer*** of securities under certain circumstances.  NRC § 104.8401.  The UCC does not impose upon anyone a duty to issue new securities.

To plead adequately a claim pursuant to Article 8 of the UCC, a plaintiff must plead compliance with the requisite preconditions, including a proper presentment.  See NRC § 104.8401, Official Comment ("If any of the preconditions do not exist, there is no duty to register transfer."); Guilfoyle v. Olde Monmouth Stock Transfer Co., 335 P.3d 190, 195 (Nevada 2014).

As a matter of law, the proper presentment of a stock certificate or an instruction for uncertificated shares is a precondition to the imposition of a duty upon a transfer agent to act, and thus, to any liability based upon the transfer agent's alleged failure to effect the transfer.  See NRC § 104.8401; Guilfoyle, 335 P.3d 190, 195 (Nevada 2014); see also American Securities v. Transfer Pantheon Industries, 871 F. Supp. 400, 402-03 (D. Colo. 1994).  Thus, absent a proper presentment by Plaintiff of their certificated security in registered form or a proper instruction for uncertificated shares, no liability can attach to Pacific for any alleged act or omission.

Plaintiff does not, because it cannot, allege that they presented Pacific with a stock certificate or other official document demonstrating ownership of the relevant securities.  Of course, this is because Plaintiff, by its own admission, was not yet a shareholder.  Rather, it was seeking to become a shareholder on issuance

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

on conversion of the convertible promissory note/Settlement Agreement.  Plaintiff may have had a contractual right to receive shares from Marani, but the very nature of its claims makes clear that it does not presently own the securities.  Thus, Plaintiff could not present to Pacific the requisite proof of ownership or make the necessary presentment.

Plaintiff's failure and inability to make the requisite presentment to Pacific forecloses any obligation of Pacific to plaintiff pursuant to NRC § 104.8401.  And, as NRC § 104.8401 imposes no duty on Pacific to issue new shares to Plaintiff, the claim for a violation of section 104.8401 should be dismissed.

## C.   Plaintiff Fails to State A Claim Under Section 10(b) of the Securities Exchange Act As to Pacific

Count I alleges that Pacific has committed securities fraud in violation of Section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5  Complaint ¶¶ 45-49. In a private action for securities fraud involving publicly traded securities, a plaintiff must prove (i) a material misrepresentation or omission by the defendant; (ii) scienter; (iii) a connection between the misrepresentation or omission and the purchase or sale of a security; (iv) reliance upon the misrepresentation or omission; (v) economic loss; and (vi) loss causation. See Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-342 (2005). Although Plaintiff has not sufficiently pled any of the requirements necessary to sustain a Rule 10b-5 action, the element of scienter is wholly lacking.

### 1.   *Plaintiff has not met the heightened pleading standard for "scienter"*

The Private Securities Litigation Reform Act of 1995 includes exacting pleading requirements for scienter, namely, a "mental state embracing intent to deceive, manipulate, or defraud." See Tellabs, Inc., 551 U.S. at 313, 319. Plaintiffs must "state with particularity facts giving rise to a **strong inference** that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

1    (emphasis added).

2         In making this determination, courts must take into account "plausible,

3    nonculpable explanations for the defendant's conduct, as well as inferences

4    favoring the plaintiff." Tellabs, Inc., 551 U.S. at 313. Although the inference that

5    the defendant acted with scienter need not be irrefutable, it "must be more than

6    merely reasonable or permissible—it must be cogent and compelling, thus strong

7    in light of other explanations." Id. at 324 (internal citations omitted). A complaint

8    will survive "only if a reasonable person would deem the inference of scienter

9    cogent and at least as compelling as any opposing inference one could draw from

10   the facts alleged." Id. Here, the Rule 10b-5 claim fails because the allegations do

11   not give rise to a "cogent and compelling" inference that Pacific acted with intent

12   to defraud Plaintiff.  The allegations fail to create an inference of wrongdoing that

13   is at least as compelling as the competing inference that Pacific did not act with

14   fraudulent intent and was merely fulfilling its ministerial duties as a stock transfer

15   agent.

16        Plaintiff's Rule 10b-5 claim is premised on the assumption that, although

17   Pacific was required to issue the Shares to Plaintiff pursuant to the Settlement

18   Agreement, Pacific never had any intention of doing so.  Read generously, the

19   Complaint alleges that, among other things, Pacific's fraudulent intent can be

20   inferred from (a) its request for supporting documentation that was not legally

21   required; (b) its acceptance of irrevocable instructions to transfer shares to

22   Tangiers during the time period that Plaintiff was requesting transfer; and (c) its

23   failure to issue the shares to Plaintiff.

24              2.    *Pacific's Request For Supporting Documentation Does Not*

25                    *Give Rise to An Inference of Scienter*

26        The Complaint sets forth allegations tending to demonstrate that Pacific

27   acted quickly to seek clarification of unclear documentation provided to it by

28   Plaintiff, and that Plaintiff failed to provide the documentation.  Rather than

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

establishing a cogent and compelling inference of scienter, the Complaint gives rise to an inference that Pacific sought clarification to better perform its ministerial duties as transfer agent.

The plain text of Exhibits 3 and 5 to the Complaint establishes that, on October 27, 2017, Plaintiff presented Pacific with an irrevocable instruction letter that 1) Pacific had never signed; and 2) was signed on behalf of Marani by a person not affiliated with Marani as of October 27, 2017.  Complaint Exhibit 8. Upon receipt, an employee of Pacific wrote to Plaintiff,

> Since Margrit is no longer with the Company, we will need the irrevocable to be signed by Paul Strickland. In addition, we will need the following, templates attached:
> * ITAI in PST's format
>
> * Memorandum of Understanding
>
> * Board Resolution.

Id. Similarly, the Complaint and supporting exhibits allege that a Pacific employee reiterated Pacific's request for "a Board resolution" and "reservation docs from the Issuer."  Complaint ¶ 30, Exhibit 10.  The employee wrote, "Once I receive everything, I will be able to provide you the total amount for the transaction."[3]  Id. The Complaint further alleges that Marani and Plaintiff were engaged in discussions regarding an underlying issue, and that Pacific echoed the requests for documentation made by its principal Marani.  Complaint ¶¶ 27, 28.

Transfer agents are subject to strict liability for the wrongful issuance of securities, and are responsible for careful and correct document-keeping.  See SEC v. CMKM Diamonds, Inc., 729 F.3d 1248 (9th Cir. 2013).  Far from alleging a

---

[3] This is a reference to the fee charged by Pacific for processing the issuance request.  The Complaint does not allege that the fee was ever tendered to Pacific, a further justification for Pacific's not completing the request.

cogent and compelling inference that Pacific acted with scienter, the facts alleged by Plaintiff give rise to the plausible inference that, faced with incomplete documentation, unsigned instruction letters, and changes in personnel at Marani, Pacific sought clarifying documents to ensure that it was appropriate to issue shares to Plaintiff, and did not issue shares when Plaintiff failed to provide the documents.

### 3. *Pacific's Acceptance Of Instructions To Issue Shares To Tangiers Does Not Demonstrate Scienter*

The Complaint alleges that, on October 30, 2017, Pacific represented that "Marani had 7 billion authorized shares and that only approximately 2 billion of the 7 billion shares had become outstanding or reserved."  Complaint 25; Exhibit 9. The Complaint further alleges that Strickland, Marani and Pacific entered into an agreement with Tangiers where Pacific received irrevocable instructions to issue approximately 5 billion shares of Marani to Tangiers upon Tangiers' demand. Complaint ¶ 26, Exhibit 4.

Plaintiff evidently intends to suggest that Pacific's response to its request for information should have included unasked for details regarding the separate transaction with Tangiers.  The plain text of Exhibit 9 makes it clear that Plaintiff inquired "Please advise of the current outstanding shares of [Marani]."  Plaintiff did not request information regarding the number of shares reserved to others, such as Tangiers.  The Complaint also fails to allege that Pacific was required to respond to Plaintiff's request at all.  Rather than creating an inference of scienter, Exhibit 9 creates a more compelling inference that Pacific acted in good faith when it answered Plaintiff's inquiries when not required to do so.

Plaintiff's insinuation that Pacific exhibited scienter by executing its principal Marani's instructions to reserve shares for Tangiers is out of step with the

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

law.[4]   It is well-established that a transfer agent's mere acceptance of instructions from its principal does not give rise to an inference of wrongdoing.  See M.G.L. c. 106, § 8-115, cmt. 5 ("It is not the role of the [transfer agent] to police whether the transactions recorded are appropriate."); Reyos v. U.S., 431 F.2d 1337, 1346 (10th Cir. 1970) (no liability to transfer agent where it performs purely ministerial acts), rev'd on other grounds; Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 152 (1972) (although transfer agents have no duty to shareholders where they perform purely ministerial stock transfers, they can be liable for actions that go beyond purely ministerial actions); Hackford v. First Sec. Bank of Utah, N.A., 1983 WL 20180, at *4 (10th Cir. Jan. 31, 1983) (transfer agent engaged in purely ministerial functions when all it did was facilitate a sale and transfer of trust shares).

          Given that Pacific was not a party to the underlying transactions, it had no reason or duty to know what the substantive deal terms between either Marani and Plaintiff or Marani and Tangiers were, or if they had changed.  To the extent that the Complaint makes any allegations regarding Pacific's alleged preference for Tangiers, the Complaint alleges that Marani sought proofs of claim to the Shares from Plaintiff and Pacific merely echoed its principal's conduct.[5]   Complaint ¶¶ 27, 28.  The Complaint makes no allegations that Pacific stood to gain anything from reserving shares for Tangiers or denying issuance to Plaintiff.

---

[4] As noted above, it also misreads the timeline of Marani's transactions.  Marani only increased its authorized from 2 to 7 billion at the time of the Tangiers transaction.  The same number of shares were authorized but unissued and unreserved before the increase for Tangiers as after the increase.

[5] The Complaint makes clear that management of Marani had changed between the time the Settlement Agreement was entered and October 2017 when Plaintiff submitted its conversion request.  Pacific can hardly be faulted for inquiring as to whether due consideration had been paid by Plaintiff to substantiate the issuance of the 177,000,000 Shares for immediate sale to the public.  In any event, this issue is no more than a distraction, as Plaintiff never presented Pacific with Marani's authorization to issue the shares.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

Pacific had no duty to question duly authorized transfer instructions from Marani, and no duty to prioritize Plaintiff's request.  Pacific's mere acceptance of instructions from Marani is a routine performance of its ministerial duties as a transfer agent, and does not give rise to a cogent and compelling inference of scienter.

### 4.   *The Fact That Pacific Did Not Issue Shares To Marani Does Not Give Rise To An Inference Of Scienter*

Finally, Plaintiff implies that, because Pacific never issued the Shares to Plaintiff, Pacific was coordinating with the other Defendants.  Complaint ¶¶ 27, 28, 31, 47. There are at least two problems with this leap. First, the Complaint fails to allege that Plaintiff ever provided Pacific with the documentation it requested, or even that Plaintiff told Pacific that the requested documentation was not required. Complaint Exhibits 5, 8. Pacific did reserve shares for Tangiers – after Marani presented correct and complete documentation instructing Pacific to do so.  Thus, the more "compelling and cogent" inference is that Pacific was simply unable to complete the transfer because it never received the requisite documents from Plaintiff, not that it intended to defraud Plaintiff. This case is similar to <u>Dillon v. Militano</u>, 731 F.Supp. 634, 637 (S.D.N.Y. 1990), in which the plaintiff alleged that Securities Settlement Corp. ("SSC"), a clearing broker, had violated Rule 10b-5 by aiding two brokers in a scheme to corner the market by acquiring the "public float" of a particular stock in order artificially to inflate the share price.  SSC cleared all the trades in question. In dismissing the plaintiff's claims against SSC for failure to state a claim, the court noted that "SSC was merely performing bookkeeping functions" and that "[i]n no way, shape or form does the complaint plead that SSC was making decisions regarding the accounts." <u>Id</u>. at 636. "The pleading indicates that SSC simply executed the . . . transactions along with the other transactions sent to it [and] was not in a fiduciary relationship." <u>Id</u>. Because the complaint failed to allege any facts that SSC acted outside of its ministerial functions, it did

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

not possess the requisite scienter and no liability could attach. <u>See id.</u> (citing <u>Faturik v. Woodmere Securities, Inc.</u>, 442 F. Supp. 943, 945 (S.D.N.Y. 1977) ("Furthermore, if [the clearing broker was] performing mere clerical functions on orders placed by [the introducing broker], we would be hard pressed to find that [the clearing broker] had the requisite 'scienter,' that is, 'intent to deceive, manipulate, or defraud."). Similar to Dillon, the complaint here fails to allege any facts that Pacific did anything other than mechanically process Marani's requests as was required under the irrevocable instructions in Exhibit 4.  Additionally, the Complaint fails to allege that Pacific stood to gain anything from reserving shares for Tangiers, or from refraining from issuing shares to Plaintiff.  Without more, Plaintiff's Rule 10b-5 allegations do not adequately plead scienter under the heightened standards of the PSLRA, and Count 1 must be dismissed as to Pacific.

### D. <u>Plaintiff Failed To State A Claim For Fraud As To Pacific</u>

Plaintiff's claims at common law also fail.  Count 2 sets forth a claim for fraud and deceit.  "The elements which must be pleaded to plead a fraud claim are '(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " <u>Agricultural Ins. Co. v. Superior Court</u> 70 Cal.App.4th 385, 402, (Cal. App. 2 Dist. 1999) (internal citations and quotations omitted).  Plaintiff has not adequately alleged any element other than damages, and the fraud claim should be dismissed.

#### 1. *Plaintiff Failed Adequately To Plead That Pacific Made Any Misrepresentations*

Plaintiff alleges three "misrepresentations" by Pacific.  The plain text of the Complaint indicates that each "misrepresentation" was either a true statement, or an ambiguous implication.  Neither rise to the level of misrepresentation sufficient to support a fraud claim.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

In paragraph 21, plaintiff alleges that Pacific responded to its request to issue shares by requesting more documentation.  Plaintiff alleges that this constituted "misrepresenting by implication that the 177 million shares of common stock would be delivered if certain new documents were created to authorize such issuance by Marani's new management…"  The paragraph proceeds to recite Plaintiff's belief that no such documents were legally required.  Plaintiff itself acknowledges that Pacific's "misrepresentation" was no such thing; at most, the paragraph alleges that Pacific requested documentation that may not have been legally required, which does not constitute a falsehood.

Plaintiff next alleges that "…Pacific, well aware that Bodie had initiated conversations on October 26, 2017, expressly represented that Marani had 7 billion authorized shares and that only approximately 2 billion shares of the 7 billion authorized shares had become outstanding or reserved."  Complaint ¶ 25 (emphasis omitted); Exhibit 9.  Notably, Plaintiff does not allege that Pacific's representation was untrue, or a misrepresentation.  Rather, Plaintiff alleges that Defendants entered into an irrevocable instruction letter committing the approximately 5 billion additional shares to Tangiers the same day that Pacific communicated their existence to Plaintiff.  The plain text of Exhibit 9 makes it clear that Plaintiff never asked Pacific how many shares of Marani were reserved.  Unsurprisingly, Pacific did not answer a question it was not asked.  Plaintiff does not, and cannot, allege that Pacific's representation to Plaintiff was untrue at the time it was made.

Finally, Plaintiff alleges that an employee of Pacific "misrepresented to Bodie that: '[she had] not received a Board Resolution or reservation docs from the Issuer.  Once I receive everything, **I will be able to provide you the total amount for the transaction.**' Emphasis added."  Complaint ¶ 30, Exhibit 10.  Plaintiff concedes in the same paragraph that it could not provide the requested documents to Pacific.  There is no legal basis to assert that a future conditional statement constitutes a falsehood.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

2.    *Plaintiff Failed to Plead Reasonable Reliance on Pacific's Alleged Misrepresentation*

"It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation." <u>Mirkin v. Wasserman</u>, 5 Cal.4th 1082, 1088 (Cal.,1993). "Reliance is justifiable only when circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." <u>Philipson & Simon v. Gulsvig</u>, 154 Cal.App.4th 347, 363 (Cal.App. 4 Dist.,2007) (internal citations and quotations omitted).

The Complaint alleges facts that clearly indicate that Plaintiff did not rely on any statement by Pacific.  The Complaint alleges that Plaintiff made requests of Pacific on October 27, October 30, and November 1 of 2017.  Complaint ¶¶ 20, 21, 25, 30; Exhibits 3, 8, 9, 10.  Far from relying on Pacific's statements and taking no action or investigation, the Complaint additionally alleges that Plaintiff pressed Marani and Strickland for information regarding the viability of its right to the issuance of the Shares on October 26, October 27, October 30, October 31, and November 1, 2017.  Complaint ¶¶ 16, 17, 18, 22, 23, 27, 29.  The Complaint clearly alleges that Plaintiff's suspicions were aroused, and that it actively sought information from Pacific's principal.  Finally, Plaintiff filed the initial pleading in this action mere days after initiating contact with Pacific.  The Complaint's bald, unparticularized assertion that, "[a]s a direct and proximate cause of such Defendants' conduct, false statements and omissions, upon which Plaintiff reasonably relied…" cannot overcome the plain facts pled by Plaintiff.  Plaintiff has failed to allege reliance on any statement by Pacific, and its fraud claim should fail.

//
//
//

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

### 3.   *Plaintiff Failed to Adequately Plead Scienter Or Intent To Defraud*

As discussed above extensively, Plaintiff failed adequately to plead scienter or intent to defraud.  Its fraud claim should fail for this reason as well as the claim's other deficiencies.

### E.   **Plaintiff Fails To State A Claim for Aiding And Abetting Breach Of Fiduciary Duty**

In Count Five, Plaintiff alleges that Pacific aided and abetted Strickland's breach of fiduciary duty.  "To state a claim for aiding and abetting breach of fiduciary duty under California law, a plaintiff must allege that the defendant: (1) had actual knowledge of the specific primary wrong being committed by the fiduciary; and (2) provided substantial assistance to the fiduciary to accomplish the specific breach of fiduciary duty."  Namer v. Bank of America, N.A., 2017 WL 1180193, at *4 (S.D.Cal., March 30, 2017).  Plaintiff must also allege the existence of a fiduciary duty and its breach.  Id.

Plaintiff's claim fails for a simple reason.  The fiduciary duty it alleges was breached in Count 4 is Strickland's duty to shareholders.  As discussed at length above, and as is inherent in the very premise of this action, Plaintiff never became a shareholder; Pacific never issued shares to Plaintiff.

### F.   **Plaintiff's Remaining Tort Claims Against Pacific Fail Because Pacific Is An Agent of A Disclosed Principal**

Plaintiff has made no allegations, nor could it, that Pacific acted in any capacity other than as the agent of disclosed principal Marani.  It is clear that Plaintiff's tort claims cannot be appropriately pled against Pacific.

Count Six of the Complaint seeks relief for "Conspiracy To Breach Fiduciary Duties and Interfere With Contractual Relations…," and Count 7 seeks relief for "Intentional Interference with Contractual Relations…"  Neither of these counts are appropriate as against an agent for a disclosed principal.

Even presuming that Plaintiff has properly plead the existence of a fiduciary duty, "[u]nder California law, duly acting agents and employees cannot be held liable for conspiring with their own principals." <u>Keshish v. Allstate Insurance Company,</u> 2012 WL 12887075, at *4 (C.D.Cal., Oct. 19, 2012) (internal citations and quotations omitted).

Similarly, California courts hold that it is not coherent to assert that agents can tortuously interfere with contracts to which their own principals are a party. <u>See, e.g</u>., <u>PM Group, Inc. v. Stewart</u>, 154 Cal.App.4th 55, 65 (Cal.App. 2 Dist.,2007) ("The tort of intentional interference with contractual relations is committed only by strangers… Consequently, a contracting party is incapable of interfering with the performance of his or her own contract and cannot be held liable in tort for conspiracy to interfere with his or her own contract… [N]either [principle] nor his agents can be liable for the tort of interfering with the subcontracts.") (internal citations and quotations omitted).

## G. **Plaintiff's Dangling Claim For Declaratory and Injunctive Relief Should Be Dismissed As Against Pacific**

As discussed above, Plaintiff is not in privity with Pacific. Plaintiff has not plead that Pacific owed it any duties that were breached. The catch-all Ninth Claim For Relief For Declaratory And Injunctive Relief Against All Defendants does not identify any specific conduct by Pacific. Plaintiff's claim for declaratory and injunctive relief is too vague to persist as to Pacific.

## IV. **THERE IS NO BASIS UPON WHICH JURISDICTION MAY BE EXERCISED**

### A. **There Is No Subject Matter Jurisdiction**

Should the Court dismiss Claim One as against Pacific, 28 U.S.C. § 1331 does not provide a basis for asserting jurisdiction over Pacific. There are no additional federal claims against Pacific, and therefore no basis for asserting federal claim jurisdiction. The Court also lacks diversity jurisdiction in this case.

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

The Complaint alleges that both Bodie and Pacific are Nevada corporations. Complaint ¶¶ 3, 5.

While the Court may exercise supplemental jurisdiction over state law claims as against Pacific pursuant to 28 U.S.C. § 1367(a), the Court should decline to do so.  As discussed above, the claims do not stand on the merits.  As detailed below, the Court lacks a basis to assert personal jurisdiction over Pacific.

**B.**    **There Is No Basis Upon Which Personal Jurisdiction Can Be Exercised**

Specific jurisdiction is properly exercised when the action arises out of a defendant's isolated contacts with the forum.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  General jurisdiction results from a party's substantial or pervasive contacts with the forum state that may be unrelated to the litigation.  Helicopteros, 466 U.S. at 414-15.  Under either analysis, "the plaintiff has the initial burden of demonstrating facts justifying the exercise" of personal jurisdiction.  Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).  As set forth below, Plaintiff has failed to meet its burden and has provided no basis for this Court to exercise either specific or general jurisdiction over Continental.

*1.*    *Pacific Fails to Allege Facts Upon Which Specific Jurisdiction May Be Based*

California's long-arm statute permits California courts to exercise specific jurisdiction on any basis that is not inconsistent with the Constitution of California and the United States. See Cal. Civ. Proc. Code § 410.10; see also, Goehring v. Superior Court, 62 Cal. App. 4th 894, 904 (Cal. App. 4th Dist. 1998).  A court may assert specific jurisdiction over a defendant where a plaintiff establishes: (1) the defendant has purposefully availed himself of the benefits and protections of the forum state; (2) the claim arose directly out of defendant's contacts with the forum state; and (3) the exercise of jurisdiction is reasonable and comports with fair play

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

1   and substantial justice. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472-73

2   (1985).

3       "Purposeful availment" requires that the defendant has either purposefully

4   directed its activities at residents of the forum, or purposefully availed itself of the

5   privilege of conducting activities within the forum state.  See <u>Thomas P. Gonzalez</u>

6   <u>Corp. v. Consejo Nacional De Produccion De Costa Rica</u>, 614 F.2d 1247, 1251

7   (9th Cir. 1980).  This prong is only satisfied when the defendant voluntarily and

8   intentionally directs his activities toward the forum so that he should expect, by

9   virtue of the benefit he receives, to be subject to the court's jurisdiction based on

10  his contacts with the forum.  See <u>Brayton Purcell LLP v. Recordon & Recordon</u>,

11  606 F.3d 1124, 1128 (9th Cir. 2010).

12      As set forth in the February 14, 2018 Declaration of Kevin Kopaunk (the

13  "Decl."), there is no basis for the exercise of specific personal jurisdiction over

14  Pacific because all of Pacific's transfer agent services and functions are performed

15  exclusively from its Nevada offices. Decl. ¶¶ 4, 11.  Pacific does not sell products,

16  transact business, or perform any services in California.  It is not registered or

17  qualified to do business in California.  Decl. ¶¶ 5, 7. It has no subsidiaries or

18  affiliates incorporated or qualified to do business in California.  Decl. ¶ 7.  Further,

19  Pacific does not maintain an office or other facility in California; it does not own

20  or lease property in California; none of its officers, directors, employees, or agents

21  are domiciled in California; and no meetings of Pacific's board of directors or

22  shareholders are held in California.  Decl. ¶ 5.  Moreover, Pacific does not own or

23  operate any separate business in California.  Decl. ¶ 7.

24      Plaintiff attempts to make much of the legally insignificant fact that Pacific

25  was once incorporated in California.  Plaintiff has identified a business that is,

26  upon information and belief, unrelated to Pacific.  Decl. ¶ 9.  Plaintiff's emphasis

27  cannot contravene the well-established principle that simply entering into two

28  contracts with a California resident and a non-resident with a principal place of

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

business in California, as Pacific has done here with Marani and Tangiers, is not enough for a nonresident defendant to become subject to the specific jurisdiction of California. See Goehring v. Superior Court, 62 Cal. App. 4th 894, 907 (Cal. App. 4th Dist. 1998); see also Thomas P. Gonzalez Corp., 614 F.2d at 1254. California courts have held that a party's entry into a contract with an out-of-state party does not in itself demonstrate purposeful availment in the other party's home forum. Goehring, 62 Cal. App. 4th at 907; see also, Aquila, Inc. v. Superior Court, 148 Cal. App. 4th 556, 572 (Cal. App. 4th Dist. 2007).  Here, it is not clear why California would be selected as the home forum in the first place: Pacific is alleged to have entered agreements with Strickland, a citizen of the state of Washington; Bodie, a Delaware corporation; Tangiers, a Delaware corporation with a principal place of business in California; and Marani, a Nevada corporation.

Other factors to be considered include the location of prior negotiations, contemplated future consequences, and the parties' course of dealings.  See Burger King Corp. v. Rudzewicz, 471 U.S. at 479, 105 S.Ct. at 2185.  Pacific did not leave Nevada to engage in negotiations, nor had Pacific ever stepped foot in California during the course of the parties' dealings.  Decl. ¶¶ 4, 11.  Pacific received all communications from Plaintiff and the other Defendants in its offices in Nevada. Decl. ¶ 11.  In every instance, Pacific acted from its office in Nevada.  Decl. ¶¶ 4, 11.  As such, the contract does not demonstrate purposeful availment.

Without any further allegations of Pacific's contact with California, any exercise of personal jurisdiction over Pacific would be a violation of the Due Process Clause in the federal Constitution.

### 2.     *Plaintiff Fails to Allege Facts Upon Which General Jurisdiction May Be Based*

Where, as here, a plaintiff cannot demonstrate specific jurisdiction over a defendant, a defendant may still be subject to general jurisdiction where it maintains "continuous and systematic" contact with the state, even if the current

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS

action is unrelated to those contacts.  <u>Helicopteros Nacionales de Colombia, S.A.</u>
<u>v. Hall</u>, 466 U.S. 408, 416 (1984).  General jurisdiction may be asserted over a
non-resident defendant only where the contacts with the state are substantial,
continuous, and systematic, or extensive and wide-ranging.  <u>Perkins v. Benguet</u>
<u>Consol. Mining Co.</u>, 342 U.S. 437, 445 (1952); <u>see</u> <u>also</u>, <u>Buckeye Boiler Co. v.</u>
<u>Superior Court of Los Angeles County</u>, 71 Cal. 2d 893, 898 (Cal. 1969).

The complaint in this case is devoid of any indication that Pacific engaged in
substantial, continuous, and systematic activity in California.   In fact, it does not
allege any substantial activity or contacts by Pacific with California, asserting
general jurisdiction on the sole basis that Pacific once formed in California, before
moving its registration and offices to Nevada.  Complaint ¶ 10(c).   In fact, Pacific
was a Nevada corporation at all times relevant to the Complaint.  Decl. ¶¶ 8, 9.
The Complaint does not allege that Pacific performed any services or functions on
behalf of Marani, Tangiers or anyone else, in California.  And the Complaint does
not allege that Pacific actively solicited business in California, or sent employees
to California.  That Pacific serves as transfer agent for Marani, a Nevada
corporation with a principal place of business in California, and entered into an
agreement with a California corporation, Tangiers, are the only reference to
Pacific's contacts with California at the times relevant to the Complaint.  Such
allegations fall far short of that which is needed to establish general jurisdiction.
Complaint ¶ 10(c).

For the foregoing reasons, plaintiff has not and, indeed, cannot make the
requisite prima facie showing that Pacific should be subject to the jurisdiction of
this Court and, therefore, all the causes of action against Pacific should be
dismissed in their entirety.

## V.   <u>CONCLUSION</u>

Plaintiff has not adequately plead that it has any meaningful legal
relationship with Pacific.  Plaintiff has not plead that it is in privity with Pacific.

1  Plaintiff has not successfully plead that Pacific owed it any duties, or that it relied

2  on Pacific's conduct.  Further, Plaintiff has not made a sufficient showing that

3  Pacific is subject to the jurisdiction of this Court.  Plaintiff's Complaint should be

4  dismissed as to Pacific.

5

6                                       **WINGET SPADAFORA &**
                                     **SCHWARTZBERG LLP**

7

8  Dated: February 15, 2018     By:     *s/Richard P. Tricker*

9                                     Richard P. Tricker
                                   Rachel D. Dardashti

10                                     Attorneys for Defendant
                                   PACIFIC STOCK TRANSFER

11                                     COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT PACIFIC STOCK TRANSFER COMPANY'S MOTION TO DISMISS