1
2
3
4
5
6
7
8
9

BRIAN T. CORRIGAN, ESQ. (BAR NO. 143188)
STANLEY C. MORRIS, ESQ. (BAR NO. 183620)
**CORRIGAN & MORRIS LLP**
12300 WILSHIRE BOULEVARD, SUITE 210
WEST LOS ANGELES, CALIFORNIA 90025
BCORRIGAN@ CORMORLLP.COM
SCM@CORMORLLP.COM
TELEPHONE: (310) 394-2800
FACSIMILE: (310) 394-2825

*Attorneys for* Plaintiff
BODIE INVESTMENT GROUP, INC.

10

## UNITED STATES DISTRICT COURT

11

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25 | BODIE INVESTMENT GROUP, INC., a Delaware corporation,<br><br>   Plaintiff,<br><br>   V.<br><br>MARANI BRANDS, INC., a Nevada corporation, PAUL STRICKLAND, a Washington citizen; PACIFIC STOCK TRANSFER COMPANY, aka PACIFIC STOCK TRANSFER, INC., a Nevada corporation, and TANGIERS INVESTMENT GROUP, LLC, a Delaware limited liability company,<br><br>   Defendants. |

**CASE NO.: 17-cv-01946-JLS-JDE**
**Judge: Honorable Josephine L. Staton**

**PLAINTIFF'S OPPOSITION TO MOTION OF PACIFIC STOCK TRANSFER COMPANY TO DISMISS FIRST AMENDED COMPLAINT**

**Complaint Filed: November 2, 2017**

**Date: March 16, 2018**
**Time: 2:30 p.m.**
**Courtroom: 10A**

26
27
28

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.     INTRODUCTION……………………………………….......     1

II.    SUBJECT MATTER JURISDICTION EXISTS………………     2

III.   PERSONAL JURISDICTION EXISTS………………………...     3

     **A.**   First Claim for Relief – Securities Fraud………………...     7

         1.   The FAC adequately pleads a fraud claim

            under Section 10(b) and Rule 10b-5……………...     8

         2.   The FAC adequately pleads scienter………………     14

         3.   The misrepresentations and omissions were made in

            connection with the *purchase or sale* of securities..     16

         4.   Causation………………………………………..     17

     B.   Second Claim for Relief – Common Law Fraud…………     18

     C.   Fifth Claim for Relief-Aiding and Abetting

        Breach of Fiduciary Duties………………………………     18

     D.   Sixth Claim for Relief – Conspiracy……………………..     19

     E.   Seventh Claim for Relief – Intentional

        Interference with Contractual Relations…………………     20

     F.   Eight Claim for Relief- Failure to Register, Issue and

        Deliver Shares Pursuant to NRS §§ 104.8401 and 104.8407     21

     G.   Ninth Claim for Relief – For Declaratory and Injunctive Relief     24

     H.   If any Part of Motion is Granted, Then

        Leave to Amend Should be Granted……………………..     24

IV.    CONCLUSION……………………………………………     25

**CORRIGAN & MORRIS, LLP**
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

# TABLE OF AUTHORITIES

FEDERAL CASES

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128, 31 L. Ed. 2d 741, 92 S. Ct. 1456 (1972)                     10

*American Securities v. Transfer Pantheon Industries*
    871 F.Supp. 400, 402-403 (D. Colo. 1994)                     23

*Ashcroft v. Iqbal*
    129 S. Ct. 1937, 1940 (2009)                     8

*Bourassa v. Desrocher*s
    938 F.2d 1056, 1058 (9th Cir. 1991)                     3

*Gilligan v. Jamco Develop. Corp.*
    108 F.3d 246, 249 (9th Cir. 1997)                     7

In *Grippo v. Perazzo*
    357 F.3d 1218 (11th Cir. 2004)                     17

*Guilfoyle v. Old Monmouth Stock Transfer Co.*
    335 P.3d 190, 195 (Nev. 2014)                     22, 23

*In re Convergent Technologies Sec. Lit.*
    948 F.2d 507, 512 (9th Cir. 1991)                     10

*Keshish v. Allstate Insurance Company*
    2012 WL 12887075 (C.D.Cal., Oct. 19, 2012)                     21

*In re Bauer*
    26 S.E.C. 770, 1947 WL 24474 (1947)                     16,17

*In re Southeastern Securities Corp.*
    535 U.S. at 819  (1949)                     16

*Pollard v. Geo Group, Inc.*
    607 F.3d 583, 585 n.3 (9th Cir. 2010)                     8

*Ronconi v. Larkin*
    253 F.3d 423, 429 (9th Cir. 2001)    14, 15

*Rubke v. Capitol Bancorp, Ltd.*
    551 F.3d 1156 (9th Cir. 2009)    15

*SEC v. Clark*
    *915 F.2d 439, 449 (9th Cir. 1990)*    16

*SEC v. CMKM Diamonds, Inc.*
    729 F.3d 1248 (9th Cir. 2013)    4

*SEC v. C.R. Richmond & Co.*
    565 F.2d 1101, 1106-1107 (9th Cir. 1977)    10

*SEC v. Rana Research*,
    8 F.3d 1358, 1362 (9th Cir. Cal. 1993)    16

*SEC v. Texas Gulf Sulpher Corp.*
    401 F.2d 833, 862 (2d Cir. 1968)    10

*SEC v. Yuen*
    2006 U.S. Dist. LEXIS 33938, 100-101 (C.D. Cal. Mar. 16, 2006)    10

*SEC v. Zandford*
    535 U.S. 813 (2002)    16

*Securities Investor Protection Corp. v. Vigman*
    *764 F.2d 1309, 1316 (9th Cir. 1985)*    3

*Semegen v. Weidner*
    780 F.2d 727, 729, 734-35 (9th Cir. 1985)    15

*Starr v. Back*
    652 F.3d 1202, 1204 (9th Cir. 2011)    8

*Swartz v. KPMG LLP*
    476 F.3d 756, 761 (9th Cir. 2007)    25

*Telesaurus VPC, LLC v. Power*
    623 F.3d 998, 1003 (9th Cir. 2010)    25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    127 S. Ct. 2499 (2007)    14

*United States v. Laurienti*
    611 F.3d 530, 537 (9th Cir. Cal. 2010)    10

*United States v. White*
    893 F.Supp. 1423, 1428 (C.D. Cal. 1995)    7

*United States v. Redwood City*
    640 F.2d 963, 966 (9th Cir. 1981)    7

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981(9th Cir. 2009)    15

<u>STATE CASES</u>
*PM Group, Inc. v. Stewart*
    154 Cal. App.4th 55 (2007)    21

<u>FEDERAL STATUTES AND REGULATORY MATERIAL</u>
Fed. R. Civ. P. 12(b)(6)    7
Fed R. Civ. P. 9(b)    15
15 U.S.C. § 78j    3, 8
28 USC §1331 3
28 USC §1367(a)    3
15 U.S.C. §78aa.    3
15 U.S.C. § 78u-4(b)(2)    14

<u>STATE STATUTES</u>

Cal. Civ. Code §§ 1709; 1710, 1572    18
Nev. Rev. Stat. §§ 104.8401 and 104.8407    4, 20, 21, 23, 24
Nev. Rev. Stat. § 104.8403    22

Plaintiff, Bodie Investment Group, Inc. ("Plaintiff" or "Bodie"), by and through its attorneys, respectfully submits this Opposition to the Motion to Dismiss the First Amended Complaint ("FAC") filed by Defendant, Pacific Stock Transfer Company ("Pacific"). The allegations in the Complaint and substantial evidentiary record submitted to the Court on November 24, 2017 in support of Bodie's second application for a temporary restraining order at Docket Entries number 24 through 24-13; and 25, through 25-17, inclusive, are incorporated by this reference. In addition, the Declaration of Brian T. Corrigan is filed concurrently on certain limited matters raised by the Motion.

## I.  **INTRODUCTION**

This is an action against Marani Brands, Inc. ("Marani"), Paul Strickland ("Strickland"), Marani's Chief Executive Officer, Pacific, Marani's stock transfer agent, and Tangiers Investment Group, LLC ("Tangiers" and, collectively with Marani, Strickland and Pacific, the "Defendants") seeking money damages and injunctive relief arising from wrongful actions taken to deprive Bodie of 177 million shares of Marani common stock and conversion rights under the terms of Bodie's Convertible Note dated February 1, 2010 (a true and correct copy of which is attached to the FAC at **Exhibit 1**); Settlement Agreement dated November 25, 2014 (a true and correct copy of which is attached to the FAC at **Exhibit 2**) and Conversion Notice dated October 26, 2017 (a true and correct copy of which is attached to the FAC at **Exhibit 3**).

After filing the Complaint, Bodie learned that on October 30, 2017, **four days after the October 26, 2017 Conversion Notice** was delivered to Marani and Pacific, Marani, Pacific and Tangiers entered into a secret irrevocable letter agreement to reserve all 5 billion unreserved shares to Tangiers, thus preventing the registration and delivery of authorized shares to Bodie on account of its October 26, 2017 conversion and any subsequent conversions. FAC at **Exhibit 4** (the "PST Irrevocable Reserve Contract"). Bodie amended the Complaint, added Pacific and Tangiers as defendants, and added claims arising from such wrongful

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 1

acts by such defendants, including securities fraud claims under Section 10(b) of the Exchange Act.

Throughout the Motion, Pacific minimizes the PST Irrevocable Reserve Contract, referring to it as a ministerial instruction.  But, when explaining the significance of such irrevocable instruction letters in its effort to get out from under its NRS 104.8407 obligations, Pacific concedes its importance: "[T]he execution of the irrevocable instruction letter creates privity between the agent and the holder of the convertible debenture that would not otherwise exist."  Motion at 7, citation omitted.  Pacific is thus hoist on its own petard.  The PST Irrevocable Reserve Contract critically places Pacific in privity of contract with Tangiers, and in conflict with its statutory duties to Bodie.

Outrageously, <u>four days after receiving Bodie's Conversion Notice</u> (FAC, Exh. 3), and <u>three days after receiving a legal opinion letter and proof that Bodie was rightfully entitled to 177 million Marani shares</u>, Pacific expressly agreed in writing to reserve to Tangiers, not Bodie, the entire 5 billion authorized shares otherwise available to satisfy Bodie's Convertible Note, and irrevocably committed that Pacific "**will not cancel or abolish an existing share reservation amount without the express written consent of both the Company and the Investor [Tangiers] or proof that the security has been fully converted**."  FAC Exh. 4, ¶6, at bates page 000090.  Emphasis in original. Based on that PST Irrevocable Reserve Contract, signed in bad faith by Marani, Tangiers and Pacific, Marani and Pacific steadfastly have refused to honor Bodie's conversions.

The Motion should be denied in its entirety because the facts, as properly alleged and supported by evidence, establish a prima facie case for jurisdiction, and each element of the claims asserted against Pacific.

## II.      SUBJECT MATTER JURISDICTION EXISTS.

Pacific contests subject matter jurisdiction. Subject matter jurisdiction originally existed in this case based on diversity of citizenship jurisdiction.  When Tangiers was added to the FAC, diversity was defeated, because both Bodie and

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 2

Tangiers were organized in Delaware.  Plaintiff added the first claim for relief for securities law violations under Section 10(b) of the Exchange Act and Rule 10b-5 upon which subject matter jurisdiction is now based. See 28 USC §1331.

If the Court sustains the First Claim for Relief against Pacific, which it should, it also must hold that subject matter jurisdiction exists pursuant to 28 USC §1331.

If the First Claim for Relief fails as against Pacific, so long as the Court sustains the Section 10(b) claim against any of the defendants, which it should, and sustains at least one other claim against Pacific, which it should, supplemental jurisdiction would suffice to provide subject matter jurisdiction. See 28 USC §1367(a).

In the event the Section 10(b) claim fails at the pleading stage as to all parties, Tangiers could be dismissed from the action on amendment of the Complaint, and diversity jurisdiction would be reinstated as to the remaining defendants. Alternatively, Plaintiff could refile the action in the state court.

## III.    **PERSONAL JURISDICTION EXISTS.**

Personal jurisdiction exists over Pacific.  "So long as a defendant has minimum contacts **with the United States**, Section 27 confers <u>personal jurisdiction</u> over the defendant in any federal district court." Emphasis added.  *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985); *Bourassa v. Desrocher*s, 938 F.2d 1056, 1058 (9th Cir. 1991); 15 U.S.C. §78aa.  Thus, personal jurisdiction in securities fraud cases reaches citizens of all 50 states, including Nevada. Pacific's own CEO, Kevin Kopaunik, admitted at DE 46-1, ¶1, that Pacific is a Nevada corporation.  Thus personal jurisdiction exists provided the Section 10(b) claim survives.

Even if the Section 10(b) claim fails, such that subject matter jurisdiction would rest on diversity of citizenship (upon the dismissal of Tangiers), there is no question that general and specific personal jurisdiction exist in California Pacific.

General jurisdiction exists as to Pacific because it has systematic and continuous contacts with California as a transfer agent serving national securities markets, their issuers and their shareholders. Like all stock transfer agents, Pacific

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 3

is nationally registered with the Securities and Exchange Commission ("SEC") to act as a transfer agent with respect to U.S. securities markets.  The SEC explains the significant role of its transfer agents, as follows:

> Transfer agents record changes of ownership, maintain the issuer's security holder records, cancel and issue certificates, and distribute dividends.  **Because transfer agents stand between issuing companies and security holders, efficient transfer agent operations are critical to the successful completion of secondary trades.**  Section 17A(c) of the 1934 Act requires that transfer agents be registered with the SEC….  The SEC therefore has promulgated rules and regulations for all registered transfer agents, **intended to facilitate the prompt and accurate clearance and settlement of securities transactions and that assure the safeguarding of securities and funds**.  The rules include minimum performance standards regarding the issuance of new certificates and related recordkeeping and reporting rules, and the prompt and accurate creation of security holder records and the safeguarding of securities and funds.  The SEC also conducts inspections of transfer agents.

See SEC releasees at Corrigan Declaration filed herewith, Exhibits 1 and 2.

While Pacific attempts to paint itself as an innocent, ministerial actor whose duties include only following the instructions of the issuer, Marani, Pacific owes independent duties to security holders to ensure the efficient recordation and issuance of securities to the rightful owners.  For that reason, the Uniform Commercial Code makes transfer agents jointly and severally liable for damages done as a result of their failure to satisfy such obligations.  UCC §§ 8401 and 8407.

In *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248 (9th Cir. 2013), the Ninth Circuit explains that "A transfer agent, like any other participant in a securities scheme, does not play precisely the same role in every transaction."  Id. at 1256-57.  "Transfer agents have a duty to register a transfer of stock under Nevada state law provided that the transfer is, among other things, rightful."  Id.

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 4

Thus, transfer agents are called upon not simply to change the name of record holders of stock, but to analyze who the rightful owner of securities is and to honor such rightful owner's rights by recording that ownership on the books of the company, issuing and delivering securities representing such shares and placing or removing restrictive legends on securities, as the law requires.  As a registered transfer agent, Pacific owes duties to the market, security holders and issuer.  While Pacific has, thus far, successfully stonewalled discovery on the issue,[1] it appears obvious that tens of thousands of security holders and hundreds of issuers serviced by Pacific operate their principal place of business in California.

Pacific, located just 35 miles from the California border, solicits California business on the Internet.  See pacificstocktransfer.com.  Pacific boasts on its web site at http://pacificstocktransfer.com/services:

> Pacific Stock Transfer, as part of Pacific Services Group (which includes Capital Transfer Agency in Canada) is a full service transfer agency serving public and private companies across the United States

---

[1] On January 19, 2018, Plaintiff propounded written discovery on the defendants.  On February 18, 2018, after filing the Motion to Dismiss, Mr. Tricker, counsel for Pacific, notified Plaintiff's counsel that Pacific would not respond to the discovery, pending resolution of its motion to dismiss, citing PSLRA, 15 USC §77z-1(b)(1).  Plaintiff intends to move the Court, by separate motion, or by stipulation, to permit Plaintiff to conduct formal discovery on the jurisdictional issues raised prior to the resolution of the motion to dismiss.  See Corrigan Declaration, filed herewith, at ¶3.  Courts have previously granted relief from the PSLRA stay to allow discovery from defendants regarding standing and other threshold jurisdictional matters.  *Thomas v. Metropolitan Life Insurance Co.,* 540 F. Supp. 2d 1212, 1222 (W.D. Okla. 2008); *In re Baan Co. Securities Litigation*, 81 F. Supp. 2d 75, 83 (D.D.C. 2000), *Global Intellicom, Inc. v. Thomson Kernaghan & Co.,* No. 99 CIV 342 (DLC), 1999 WL 223158, at *1-2 (S.D.N.Y. Apr. 16, 1999); *Vacold LLC v. Cerami*, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *5-7 (S.D.N.Y. Feb. 16, 2001).  In addition, the PSLRA itself specifically authorizes discovery in connection with lead plaintiff determinations.  Exchange Act Section 21D(a)(3)(B)(iv), 15 U.S.C. § 78u-4(a)(3)(B)(iv).

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

and Canada.  As a group, **we represent 2,500 issuers, comprised of over 500,000 shareholders worldwide**.” Emphasis added.

See Corrigan Declaration, **Exhibit 3**.

Notably absent from Pacific's self-serving and misleading Declaration of its Chief Executive Officer, Kevin Kopaunik, is any denial of the obvious fact that Pacific does engage in substantial, continuous and systematic business with shareholders and issuers in California. California's economy dwarfs that of nearly every state in the United States. Pacific's Internet solicitation of business, without limitation to Nevada, California's close physical proximity to Pacific's Las Vegas, Nevada headquarters, and Pacific's nationwide involvement in securities transactions through registration with the SEC, renders Pacific's feigned effort at masking its extensive and continuous dealings with California companies dubious, at best. Here, the fact that it is the transfer agent for Marani, a California based company, further defies such contention.

In addition to general jurisdiction, specific personal jurisdiction arises from the facts alleged in the FAC.  Even assuming Pacific was not already subject to personal jurisdiction under Section 27 of the Exchange Act, which it is, and even if Pacific was not already subject to general jurisdiction due to its systematic and continuous contacts with California, which it is, the claims asserted in the FAC arise out of Pacific's purposeful availment to business opportunities in California.

This case was filed in this District because Marani, the principal defendant, had its sole place of business in Irwindale, California.  See FAC, Exh. 4, p. 000112.  As a result, when Marani's breach of Bodie's Convertible Note required an enforcement action, that action was pursued in this District. See FAC, Exh. 2, referencing Case No. 14-cv-00308 JLS-AN.  When the parties settled that California action, they did so in this District.  See FAC, Exh. 2, and the Declaration of Brian T. Corrigan, filed herewith.  Jurisdiction and venue over any dispute arising from the Settlement Agreement was to be adjudicated in this Court. See FAC, Exh. 2, ¶5, p. 5, Bates Stamp 000043. Thus, when Marani breached the

**CORRIGAN & MORRIS, LLP**
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 6

Settlement Agreement, Bodie sued Marani in this Court to enforce the Settlement Agreement that settled the prior action before this Court.

Pacific, with full knowledge of such California nexus, Bodie's rightful ownership of 177 Marani shares, and all operative documents and a legal opinion letter proving such rightful claim, and after engaging in days of communications with Plaintiff following Plaintiff's October 26, 2017 Conversion Notice, secretly, intentionally and maliciously entered into the PST Irrevocable Reserve Contract on October 30, 2017 with Tangiers and Marani.  The intended and actual effect of the PST Irrevocable Reserve Contract was to intentionally and directly interfere with, and indeed prevent, the registration and delivery of Bodie's conversion shares. None of the cases upon which Pacific relies involves an SEC registered transfer agent contracting, as a separate party, to knowingly prevent the rightful owner of securities from receiving title to the stock it owned.

The action against Pacific arises directly from such wrongful action by Pacific, itself, not on behalf of Marani, but on its own behalf in violation of its own statutory duties to Bodie. Under the circumstances, it would be foolhardy for Pacific to have not anticipated that its wrongful actions would subject it to a lawsuit in California arising from the breach of that California Settlement Agreement.  By purposefully availing itself of the benefits of that PST Irrevocable Reserve Contract (presumably the continued fees earned from Marani's business), Pacific subjected itself to specific personal jurisdiction in this Court.

### A. FIRST CLAIM FOR RELIEF – SECURITIES FRAUD

"The motion to dismiss for failure to state a claim is viewed with disfavor and is *rarely granted*." Emphasis added. *Gilligan v. Jamco Develop. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997)*; United States v. White,* 893 F.Supp. 1423, 1428 (C.D. Cal. 1995)*.* A 12(b)(6) dismissal is proper only in "extraordinary cases."  *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981)*.*

A court may dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need only

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 7

include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (stating that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations").

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, **construing the complaint in the light most favorable to the plaintiff.** *Pollard v. Geo Group, Inc.*, 607 F.3d 583, 585 n.3 (9th Cir. 2010). The complaint need only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct at 1940 (citing *Twombly*, 550 U.S. at 556). The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Back*, 652 F.3d 1202, 1204 (9th Cir. 2011). The *Starr* court held that the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### 1.  The FAC adequately pleads a fraud claim under Section 10(b) and Rule 10b-5.

Section 10(b) of the Securities Exchange Act of 1934 states:

It shall be unlawful for any person, directly or indirectly, . . .(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 8

prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Rule 10b-5, states:

It shall be unlawful for any person, directly or indirectly…
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To state a securities fraud claim under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission, (2) scienter, . . . (3) a connection with the purchase or sale of a security, (4) reliance…; (5) economic loss, and (6) 'loss causation,' …." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (internal citations omitted).

Liability under the antifraud provisions of the federal securities laws arises not only from affirmative misrepresentations but also from failures to disclose material information. *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 855-856 (9th Cir. 2001). As the Ninth Circuit has made clear, federal securities law "'imposes a duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading.'" *SEC v. Fehn*, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996) (citations omitted) (emphasis added); see also *Ackerman v. Schwartz*, 947 F.2d 841, 846 (7th Cir. 1991) ("Federal [securities] law requires persons to tell the truth about material facts once they commence speaking"); *U.S. v. Cannistraro*, 800 F. Supp. 30, 81 (D.N.J. 1992) ("it is a well-settled principle that once disclosures are made, there is a duty to disclose all material information

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 9

regardless of a fiduciary duty owed to the shareholders. . . . Once a defendant chooses to speak, he or she is not free to lie or mislead.")  See also *Greenfield v. Heublein, Inc.,* 742 F.2d 751, 756, 758 (3d Cir. 1984), *cert. denied*, 469 U.S. 1215 (1985) (citing *SEC v. Texas Gulf Sulpher Corp.,* 401 F.2d 833, 862 (2d Cir. 1968) ("'Rule 10b-5 is violated whenever assertions are made . . . in a manner reasonably calculated to influence the investing public . . . if such assertions are false or misleading or so incomplete as to mislead.'")

"'Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors.'" *In re Convergent Technologies Sec. Lit.*, 948 F.2d 507, 512 (9th Cir. 1991) (citations omitted). "[T]he disclosure required by the federal securities laws is measured not by literal truth, but by the ability of material to accurately inform rather than mislead [investors]." *Id.*; see, *SEC v. C.R. Richmond & Co.*, 565 F.2d 1101, 1106-1107 (9th Cir. 1977) (finding advertisements "deceptive and misleading in their overall effect even though when narrowly and literally read, no single statement of material fact was false"). *SEC v. Yuen*, 2006 U.S. Dist. LEXIS 33938, 100-101 (C.D. Cal. Mar. 16, 2006), affirmed, *SEC v. Yuen*, 272 Fed. Appx. 615 (9th Cir. Cal. 2008).

The Ninth Circuit has noted: "The duty to disclose [ ] arises from the telling of a half-truth, independent of any responsibility arising from a trust relationship." *United States v. Laurienti*, 611 F.3d 530, 537 (9th Cir. Cal. 2010)

The Supreme Court noted in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 31 L. Ed. 2d 741, 92 S. Ct. 1456 (1972): "The Court has said that the 1934 Act and its companion legislative enactments embrace a 'fundamental purpose . . . to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus achieve a high standard of business ethics in the securities industry.'"

Based on the foregoing standard, the FAC adequately alleges Pacific's misrepresentations and omissions, including, in particular, in the following

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 10

paragraphs:

18. On October 26, 2017, Jack Bodenstein sent an email to Bodie's counsel, Tomer Tal, with a copy to Jackie Garcia, Pacific's employee, with attachments, including the Conversion Notice and supporting documentation, and asking that Tomer Tal prepare and send a legal opinion letter to Pacific that the conversion shares should be registered and delivered without restrictive legend pursuant to Rule 144. Pursuant to that request, Bodie's counsel, Tomer Tal, sent to Pacific's Jackie Garcia, the Convertible Note; Conversion Notice; Seller Representation Letter; Legal Opinion Letter and Settlement Agreement. Also on October 26, 2017, on behalf of Bodie, Mr. Bodenstein then forwarded the entire email from Mr. Tal to Pacific's Jackie Garcia with its attachments to Paul Strickland, and copied the email and attachments to Margrit Eyraud. A true and correct copy of that email string, with its attachments, is attached hereto at **Exhibit 3.**

19. ....

20. On the same day, Friday, October 27, 2017, Jack Bodenstein, on behalf of Bodie, sent an email to Jackie Garcia of Pacific advising that he was attaching a letter pursuant to which Marani promised irrevocably to reserve and deliver to Bodie 200 million shares of Marani stock. A true and correct copy of that email, with its attachment, is attached hereto at **Exhibit 3**.

21. Pacific's Ms. Garcia sent an email to Mr. Bodenstein, responding to Mr. Bodenstein's inquiries regarding the 177 million share issuance and reserve, misrepresenting by implication that the 177 million shares of Marani common stock would be delivered if certain new documents were created to authorize such issuance by new Marani's new management, including a new irrevocable reserve letter signed by Mr. Strickland, and a new Board of Directors Resolution authorizing such shares. See **Exhibit 8**. Bodie is informed and believes that no such demands were supported by existing law, given that Ms. Eyraud, as President of the issuer, Marani, had executed the Convertible Note (directing and authorizing Pacific to issue and deliver the Marani conversion shares to Bodie); the Settlement Agreement (affirming the debt obligations and amending the conversion rate); and Bodie's Irrevocable Reserve Letter instructing Pacific to register and deliver the conversions shares to Bodie at least 200 million shares of Marani stock. See **Exhibits 1, 2 and 5**.

22. ....

23. On October 30, 2017, Mr. Strickland finally returned Mr. Bodenstein's calls. Mr. Strickland misrepresented in a telephone call with Mr. Bodenstein on that date that Mr. Strickland sought to negotiate, on behalf of Marani, a leak out agreement pertaining to the conversion shares. Mr. Strickland misrepresented that he needed time to study the matter. When pressed for

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

how much time, Mr. Strickland advised that he could understand it in 24 to 48 hours. He specifically addressed Mr. Bodenstein's demands that the 177 million share conversion be honored timely. Mr. Strickland promised to study the issue and respond with Marani's position within such 24 to 48 hours.  Mr. Strickland did not mention that the very same day he had or would be signing an agreement with Tangiers irrevocably committing all of such shares to that investor, instead of Bodie and in patent violation of Bodie's stock ownership and contract rights.

24. …

25. On October 30, 2017, Marani's transfer agent, defendant, Pacific, well aware that Bodie had initiated conversions on October 26, 2017, expressly represented that Marani had 7 billion <u>authorized</u> shares and that only approximately 2 billion shares of the 7 billion authorized shares had become outstanding or reserved.  A true and correct copy of Pacific's email making that representation is attached hereto at **Exhibit 9**.

26. On October 30, 2017, the very same day that Pacific represented to Bodie that there were 5 billion shares available to meet its conversion, and the very same day that Strickland had promised to review the situation after receiving the conversion notice and Bodie's demand for shares, unbeknownst to Bodie, Strickland, Marani and Pacific entered into an express written agreement with Tangiers that (1) reserved irrevocably all 5 billion Marani authorized shares outstanding to satisfy only Tangiers' conversion rights; and (2) irrevocably instructed and agreed that Pacific would issue all of such shares only to Tangiers upon Tangiers' instruction (to the exclusion of any other shareholder or investor, including Bodie).  A true and correct copy of that irrevocable instruction letter, and the accompanying agreements first disclosed to Bodie by counsel for Pacific on December 15, 2017, is attached hereto at **Exhibit 4.**

27. On October 31, 2017, Mr. Strickland continued the deception and delay tactics, by misrepresenting to Bodie that he needed to conduct further due diligence regarding the merits of Bodie's Settlement Agreement, knowing full well that a day earlier he had signed an agreement with Marani and Pacific that would prevent Marani's compliance without either Marani's shareholder approval to increase the number of authorized shares or Tangiers' agreeing to share its reserved shares. …

28. Plaintiff is informed and believes that neither Marani nor Pacific had any intention of registering, delivering or issuing to Bodie conversion shares no matter how much proof was provided regarding the funding of the loan in February 2010 and that the coordinated demands for such proof (which Marani and Strickland had in their own records at the time of the demand and which Pacific never required when it registered and delivered stock to

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 12

Bodie pursuant to the many conversions Bodie previously made on the same Convertible Note) was nothing more than a coordinated delay tactic while they and their counsel were preparing, reviewing and negotiating the terms of the irrevocable reserve letter signed with Tangiers on October 30, 2017, after the weekend.  Moreover, Plaintiff alleges that the foregoing mountain of evidence that the loan was funded, uncontroverted by any evidence offered by the Defendants that it was not, would be sufficient for anyone honestly attempting to determine whether or not the loan was funded. Plaintiff further alleges that even if Marani had a legitimate dispute about whether or the extent to which that loan had been funded, which it does not, Marani's stipulation in the Settlement Agreement as to the amount owed resolved any such doubt or dispute as of November 25, 2014.  Under the circumstances, the fact that both Pacific and Marani insisted on proof of a fully resolved issue that Marani easily could have resolved independently based on its own bank records and accounting records, evidences that they were both acting as participants wrongfully to deprive Bodie of its contractual rights to conversions and Bodie's ownership of Marani stock upon conversion under the Settlement Agreement and Convertible Note.

29. On November 1, 2017, Mr. Bodenstein again demanded Bodie's 177 million shares from Mr. Strickland. Mr. Strickland, for the first time, advised Bodie that he could not honor Bodie's conversions because Marani entered into reserve agreements with other investors such that all the 7 billion authorized shares were committed to other shareholders. He concealed from Bodie, however, that the Defendants had created such reserve four days *after* Pacific and Marani had received Bodie's Conversion Notice and multiple demands for conversions, and during that time that Mr. Strickland claimed he needed to study Bodie's conversion rights.

30. On November 1, 2017, Pacific, through Jackie Garcia, made demands for more documentation from Marani, knowing full well it would not be possible for Bodie to provide, and misrepresented to Bodie that: "[she had] not received a Board Resolution or reservation docs from the Issuer. Once I receive everything, **I will be able to provide you the total amount for the transaction.**"  Emphasis added.  A true and correct copy of that email is attached hereto at **Exhibit 10**.

31. The Defendants knew, but omitted, concealed, misled and failed to disclose to Bodie in any of the telephone and email communications on and prior to November 1, 2017, that the Defendants had no intention of honoring Bodie's conversions, and had, instead, participated in an explicit written agreement on October 30, 2017 in which they purported to make issuance to Bodie of its stock impossible by reserving all or substantially all available shares for the benefit of Defendant Tangiers….

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 13

At page 16 of the Motion, Pacific mischaracterizes the falsehood established by the foregoing allegations, arguing that the falsehood alleged was only that documents that were requested were not legally required.  That is not the false statement supporting the claim.  The false statements, detailed above, included that on November 1, 2017, Pacific promised that if certain documents were provided by Bodie, "**I will be able to provide you the total amount for the transaction.**" Emphasis added.  See **Exhibit 10** to the FAC.  But, at the time that promise was made, the PST Irrevocable Reserve Contract had been signed by Pacific, Marani and Tangiers, but not disclosed to Bodie, and thus Pacific knew full well that no amount of documentation that Bodie could provide would result in the issuance of Marani stock because nearly all of Marani's 7 billion shares were either outstanding or reserved to Tangiers.

Pacific also contends that its statements at **Exhibit 9** to the FAC were not false or misleading because they revealed that 7 billion shares were authorized, and nearly 2 billion were either outstanding or restricted; and that it never mentioned that the 5 billion shares remaining were to be reserved to Tangiers because Bodie never asked about that.  Tell that to the jury!  Ridiculous.  The purpose of Bodie's correspondence, known to Pacific, was to convert its note into stock. An honest reply that is not misleading necessarily would have included full and fair disclosure to Bodie to the effect that Bodie's conversions would not be honored by Pacific because the remaining outstanding and authorized five billion shares were about to be reserved for Tangiers' benefit exclusively.  Instead, Pacific concealed that fact from Bodie and misleadingly assured Bodie that there were sufficient shares to cover its present and future conversions.

### 2.  The FAC adequately pleads scienter.

To sufficiently allege scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2). That is, that "he acted with intentionality or deliberate recklessness." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 14

The Supreme Court resolved the question of what constitutes a strong inference of scienter in *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 127 S. Ct. 2499 (2007). The test is whether a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference. *Tellabs a*t 2509-2510.

In 2009, the Ninth Circuit issued two decisions addressing the pleading of scienter: *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981(9th Cir. 2009) and *Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156 (9th Cir. 2009). *Zucco* requires a dual inquiry: first, whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; and second, if no individual allegations are sufficient, a holistic review of the same allegations to determine whether the allegations combine to create a strong inference of intentional conduct or deliberate recklessness. *Zucco,* at 992. The *Rubke* panel agreed with this two-step approach, finding that the trial court is required to perform a second holistic analysis to determine whether the complaint contains an inference of scienter that is greater than the sum of its parts.

As stated in *Zucco*, FRCP 9(b) requires a plaintiff, in alleging fraud or mistake, to state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. See also*, Semegen v. Weidner*, 780 F.2d 727, 729, 734-35 (9th Cir. 1985); *Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

By October 27, 2017, Pacific had all the documentation it needed to know that Bodie's conversion was rightful, that it was entitled to the registration and issuance of 177 million Marani shares, and that refusal to do so or delay in doing so would be wrongful and would cause Bodie substantial money damages.  FAC ¶¶18-31.

Assuming those allegations to be true, as the Court must, the Court should infer that when Pacific secretly entered into the PST Irrevocable Reserve Contract on October 30, 2017, it fully understood that doing so would prevent Bodie from receiving its Marani stock and from exercising any future conversions of its

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 15

Marani convertible debt under the Convertible Note and Settlement Agreement. The Court should also infer that when Pacific omitted disclosure of such facts in correspondence with Bodie thereafter, while urging Bodie to provide additional documents and assuring Bodie that doing so would result in delivery of that stock to which Bodie was entitled, Pacific intended to deceive Bodie so that Bodie would delay taking action against it, Marani or Tangiers.

In sum, the FAC includes detailed allegations that, standing alone, are sufficient to create a strong inference of scienter; and, if the Court should find that no individual allegations are sufficient, such allegations nonetheless are more than sufficient, when combined with all allegations in the FAC, to create a strong inference of intentional conduct or deliberate recklessness. *Zucco,* at 992.

### 3. The misrepresentations and omissions were made in connection with the *purchase or sale* of securities.

The element requiring that the fraud be perpetrated in connection with the purchase or sale of securities is construed with extreme breadth.  The element is satisfied if the fraud alleged "somehow touches upon" or has "some nexus" with "any securities transaction." *SEC v. Clark*, 915 F.2d 439, 449 (9th Cir. 1990); see also *SEC v. Rana Research*, 8 F.3d 1358, 1362 (9th Cir. Cal. 1993).

The "in connection with the purchase or sale" requirement must be construed "not technically and restrictively, but flexibly to effectuate its remedial purpose." *SEC v. Zandford*, 535 U.S. 813, 820-21, 122 S. Ct. 1899, 153 L. Ed. 2d 1 (2002). The *Zandford* Court cited with approval *In re Bauer*, 26 S.E.C. 770, 1947 WL 24474 (1947) and *In re Southeastern Securities Corp.,* 1949 SEC LEXIS 135, 29 S.E.C. 609 (1949) at 535 U.S. at 819.  In *Bauer*, defendants recommended the purchase of certain stocks to prospective investors, explaining that they had "inside information" that indicated that the value of the stock was about to rise. 26 S.E.C. 770, Id. at 3. Once the investor agreed to purchase the recommended securities, the defendants collected his money, but *never actually purchased the securities*, 26

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 16

S.E.C. 770, Id. at 3, 5.   The Supreme Court concluded such interpretation was reasonable and entitled to deference.  *SEC v. Zandford, 535 U.S. at 819.*

The Eleventh Circuit relied on *Zandford* and *In re Bauer* to conclude that the "in connection with the purchase or sale" requirement is satisfied even where, as here, no securities were actually purchased or sold. In *Grippo v. Perazzo*, 357 F.3d 1218 (11th Cir. 2004), Perazzo approached Grippo about investing money in foreign currency-exchange markets and debt securities through T.S.C. Financial Corp. *Id.* at 1220. Based on Perazzo's representations, Grippo began investing with T.S.C. Financial. *Id.* Grippo eventually discovered that Perazzo was stealing the money rather than using it to buy securities and filed suit in federal district court. *Id.* at 1221. The district court dismissed Grippo's securities claims, concluding that he had failed to satisfy the "in connection with" requirement, because Grippo could not connect his payment of monies to Perazzo with any actual purchase of an identifiable security -- or, for that matter, prove that the funds were ever actually invested in anything. *Id.* Relying on *Zandford*, the Eleventh Circuit reversed. *Id.* 1223-24. The court explained that the facts alleged by Grippo were analogous to the facts in *In re Bauer*. *Id*. at 1223. In both instances, the broker "'accepts payment for securities that he never intends to deliver.'" *Id*. at 1223. Thus, the court held that Grippo had pled a securities fraud claim "even though he failed to identify any particular security purchased." *Id*. at 1223.

Here, Plaintiff's securities fraud claim is similarly based on Bodie's right to the issuance and delivery of stock, which it never received due to the defendants' fraud.  This is precisely the type of fraud affecting the public securities market that Congress intended to treat under the federal securities anti-fraud provisions.

### 4.  Causation.

Pacific contends that Pacific's deception did not cause Bodie harm.  Not true.  The very reason that both Marani and Pacific concealed from Bodie that they were secretly negotiating and signing the PST Irrevocable Reserve Contract was to

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 17

delay Bodie's discovery of the true facts and enforcement of its rights until it could close the Tangiers transaction before Bodie could stop it.  Had Pacific, Strickland or Marani honestly disclosed their true intentions on October 26, 27, 28, 29 or 30, 2017, Bodie's legal and practical actions to stop the Tangiers transaction from going forward include sending cease and desist letters threatening Tangiers that closing the transaction would result in a lawsuit against it for intentional interference with contractual relations, among other things, and securing a temporary restraining order against the parties to prohibit consummation of such transaction. Had Bodie been able to prevent the PST Irrevocable Reserve Contract or the Tangiers financing contract from consummating, it presumably would have received its shares from Marani as prescribed by the Convertible Note and Settlement Agreement. See Paragraphs 32, 34 and 35 of the FAC.

### B. SECOND CLAIM FOR RELIEF – COMMON LAW FRAUD.

The elements of common law fraud are: (1) misrepresentation or omission; of (2) a material fact; (3) knowledge of its falsity; (4) intent to induce reliance; (5) justifiable reliance; (6) causation; and (7) damages. Cal. Civ. Code § 1709; 1710; 1572.  The misrepresentation must be (a) an affirmative misrepresentation or suggestion of a fact that is not true by one who knows it is not true; (b) a concealment or half-truth – the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or (c) a false promise – a promise made without any intention of performing it. Cal. Civ. Code §1710.  The allegations detailed above that satisfy the first claim for relief under Section 10(b) of the Exchange Act are equally sufficient to satisfy the elements necessary to the common law fraud claim.

### C. FIFTH CLAIM FOR RELIEF—AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 18

Pacific argues that it could not aid and abet Strickland's breach of fiduciary duties to Bodie, because Strickland owed no such fiduciary duties.  Specifically, Pacific contends that fiduciary duties are owed only to shareholders, not Bodie whose status as a shareholder was prevented because the Defendants prevented Bodie from ever obtaining the shares that it owned upon conversion.

Under the terms of the Convertible Note[2], Bodie had the absolute right to voluntarily convert its debt under the Convertible Note "into fully paid and nonassessable shares of Common stock as such stock exists on the date of issuance of this Note, or any shares of capital stock of Borrower into which such Common Stock shall be changed or reclassified, at the conversion price…  Upon delivery to the Borrower of a completed Notice of Conversion, a form of which is annexed hereto, Borrower shall issue and deliver to Holder within three (3) business days after the Conversion Date (such third day being the "Delivery Date") that number of shares of Common Stock for the portion of the Note converted in accordance with the foregoing.  note into Common Stock in Marani at the Conversion Price." See FAC, Exh. 1, ¶2.1(a)

Critically, paragraph 5.8 expressly provides that "the Holder will have all the rights of a shareholder of the Borrower with respect to the shares of Common Stock to be received by Holder after delivery by the Holder of a Conversion Notice to the Borrower."  Obviously, fiduciary duties owed to shareholders by officers of the Borrower, such as Mr. Strickland, are among such "rights of a shareholder" of Marani to which Bodie became entitled upon its delivery on October 26, 2017 of its Conversion Notice.

---

[2] Pursuant to Paragraph 2a of the Settlement Agreement (FAC Exh. 2, p. 00040), "The Convertible Note dated February 1, 2010 shall remain in full force and affect."

Corrigan & Morris, LLP
Attorneys At Law
12300 Wilshire Boulevard
Suite 210
West Los Angeles, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 19

### D. SIXTH CLAIM FOR RELIEF—CONSPIRACY

Pacific contends that the conspiracy claim fails because an agent cannot conspire with its principal.  But, Pacific conspired with Tangiers, as alleged.  Because Tangiers is not its principal, the argument fails scrutiny.

Moreover, Pacific is not merely an agent of Marani in the securities transaction at issue.  Pacific became a party to the PST Irrevocable Reserve Contract.  Pacific had an independent legal obligation to shareholders and to the market at large to comply with the registration requirements and regulations imposed on it as a condition of securing transfer agent status by the SEC.  In addition, Uniform Commercial Code section 8-407 imposes independent obligations on Pacific, as a transfer agent, to register, issue and deliver shares to rightful owners of such shares.

Pacific had every right, upon seeing that Bodie was the rightful owner of the 177 million Marani shares into which its debt was converted, to simply register the transfer of such shares to Bodie and to deliver Marani's share certificate to Marani.  Instead, it decided to defy Bodie's rights, and instead enter into a contract to prevent the issuance of such shares now and in the future, and instead to reserve substantially all authorized shares to ensure that Marani does honor future conversions of shares done by Tangiers. Such actions by Pacific were wrongful, intentional and conspiratorial.

### E. SEVENTH CLAIM FOR RELIEF—INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Pacific contends that an agent cannot tortuously interfere with the contracts of its own principal.  But, the case upon which Pacific relies is a common law agency, not a transfer agent.  A transfer agent is an agent not just for the issuer, but for the security holder as well.  Its role, as the SEC explains, is to act as an intermediary between the issuer and the security holder to ensure efficient and reliable markets.  Otherwise, Tangiers would not have had to insist on contracting directly with Pacific to ensure its compliance with Marani's instructions to reserve

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

5 billion shares, and not reduce such reserve, except as instructed by Tangiers and Marani.  The Court must determine this case based on the actual role that Pacific played in the transaction, and not based on the self-serving labels placed on its role by the Defendants.

Pacific relies on *Keshish v. Allstate Insurance Company,* 2012 WL 12887075, at *4 (C.D.Cal., Oct. 19, 2012)(not found by Plaintiff's counsel) and *PM Group, Inc. v. Stewart*, 154 Cal. App.4th 55 (2007) for the proposition that agents cannot interfere with contractual relations of their principals.  Had Pacific done nothing but act as instructed by Marani, it might have a valid argument.  But, here, Pacific entered into the PST Irrevocable Reserve Contract with Marani and third party, Tangiers, without any legal obligation to do so.  It did so because, presumably, there was some benefit to Pacific garnered by its willingness to proactively interfere with Bodie's contract rights.  Discovery will prove out exactly what compensation Pacific received for doing so.  In so contracting, Pacific was sufficiently independent of Marani that Tangiers insisted on a separate contract pursuant to which Pacific independently became in privity of contract with Tangiers, and took on certain contractual obligations, including that it would not reduce the 5 billion shares reserved to Tangiers under that agreement.  Nothing in the facts of *PM Group, Inc*. is analogous.

## F.  EIGHTH CLAIM FOR RELIEF—FAILURE TO REGISTER, ISSUE AND DELIVER SHARES PURSUANT TO NRS 104.8401 AND 104.8407

The Nevada Supreme Court explained:

> At common law, "a transfer agent [could not] be held liable to a stockholder in damages for …failure to act to remove [restrictive] legends," or refusal to register a requested stock transfer. *[Citations omitted.]* Such failure or refusal was merely nonfeasance for which the … agent was liable to the corporation alone, and for which [the corporation] in turn was liable to those injured thereby, because a stock transfer agent owed no duty to a shareholder. *[Citations omitted.]* Article 8 of the UCC, enacted in Nevada as Nev. Rev. Stat. §§ 104.8101 through 104.8511, partially

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

abrogates the common law as to transfer agents. *[Citations omitted.]* **It makes a transfer agent's duty the same as an issuing corporation's in performing the statutory functions involved in processing a request to register a transfer of securities**. Nev. Rev. Stat. § 104.8407. [Footnote omitted.]

… Since § 104.8407 defines a transfer agent's duty in terms of an issuer's, a court looks to Nev. Rev. Stat. § 104.8401, entitled "duty of issuer to register transfer," in assessing Guilfoyle's UCC claim.  Under NRS 104.8401, "[i]f a certificated security in registered form is presented to an issuer with a request to register transfer," the issuer "shall register the transfer" provided the following criteria are met:

(a) Under the terms of the security, the person seeking registration of transfer is eligible to have the security registered in his or her name;

(b) The endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(c) Reasonable assurance is given that the endorsement or instruction is genuine and authorized;

(d) Any applicable law relating to the collection of taxes has been complied with;

(e) The transfer does not violate any restriction on transfer imposed by the issuer in accordance with Nev. Rev. Stat. § 104.8204;

(f) A demand that the issuer not register transfer has not become effective under Nev. Rev. Stat. § 104.8403, or the issuer has complied with § 104.8403(2) but no legal process or indemnity bond is obtained as provided in § 104.8403(4); and

(g) The transfer is in fact rightful or is to a protected purchaser.

"If any of the preconditions do not exist, there is no duty to register transfer." UCC §8-401(1)., cmt. 1 (1994) [citations omitted.]  …. But if the statutory terms are met, so that "[the] issuer is under a duty to register a transfer of a security, the issuer is liable to the person presenting a certificated security or his or her principal for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer. § 104.8401(2)." *Guilfoyle v. Olde Monmouth Stock Transfer Co., 335 P.3d 190, 194-195 (Nev. 2014).*

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

Pacific contends that it was not obligated to comply with UCC section 104.8407 because Bodie was not yet entitled to be treated as a shareholder. But, as explained above, section 5.8 of the Convertible Note issued to Bodie by Marani expressly provides that Bodie was entitled to all the rights of a shareholder of Bodie.

Pacific separately contends that section 104.8407 requires a transfer of stock, not the issuance of new stock. It reaches that conclusion by misstating the language of section 104.8401 as being limited to stock certificates, rather than its broader language, which makes it applicable to "certificated securities" of all types, including notes. Pacific contends that "the proper presentment of a **stock certificate**" is a precondition to the imposition of a duty upon a transfer agent to act, citing NRC §104.8401; *Guilfoyle v. Old Monmouth Stock Transfer Co.*, 335 P.3d 190, 195 (Nev. 2014); and *American Securities v. Transfer Pantheon Industries*, 871 F.Supp. 400, 402-403 (D. Colo. 1994). See Motion at 8. Emphasis added. Pacific contends that Bodie did not "allege that [it] presented Pacific with a stock certificate". But, a careful reading of section 104.8401 prescribes the presentation of a "certificated security", not only one sub-category of certificated securities, "stock certificates." A "certificated security" includes a promissory note or convertible note. See Section 2(a)(1), 1933 Act ("The term 'security' means any note, stock, ….") Thus, when, on October 26, 2017, Bodie presented Pacific with a "certificated security" in the form of the Convertible Note, together with a formal Conversion Notice of a portion of the debt owing on that Convertible Note (as agreed in the Settlement Agreement), Pacific became jointly and severally obligated with Marani and liable under NRS 104.8401 and 104.8407 to register the conversion from one pre-existing certificated security, the Convertible Note, to another Marani security, in the form of common stock.

For purposes of such conversion, this act by the Transfer Agent is no different than the removal of a restrictive legend or other actions necessary for the Transfer Agent to properly record in the company's books and records the rightful

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

ownership and marketability of the company's securities.  The Nevada Supreme Court in Guilfoyle (at p. 195) explains that a transfer agent's duty "to register a transfer of shares under Section 80401 extends to a request to issue to the owner a new clean certificate for the same amount of shares."  *Id., citations omitted.* There is no logical reason why a transfer agent would not also bear the obligation to issue a clean stock certificate upon the conversion of a certificated security in the form of a Convertible Note.

Pacific contends that it is not authorized to do so because creating new stock dilutes the other shareholders.  It is true that dilution occurs whenever stock is issued.  But that dilution occurred upon the issuance of the Convertible Debt.  It is also true that the company's assets were enhances when the loan was funded, to the benefit of the existing shareholders. And, it is true that the shareholders benefit from conversion in the form of a reduction of the debt of the company.  None of that speaks to the question of the transfer agent's liability for failure to register, issue and deliver share certificates to Bodie, as rightful owner of the shares upon conversion.  Pacific's failure to do so violated NRS 104.8401 and 104.8407 under Nevada law.

Notably, nothing in the Motion challenges Bodie's absolute right to such shares.  The only defenses asserted go to whether Pacific should be held accountable for its proactive role in preventing Bodie from having its rights duly registered in Marani's books and publicly noticed in the form of stock certificates issued to Bodie in tradable form.  Pacific should, under such provisions of Nevada's Uniform Commercial Code sections 104.8401 and 104.8407, be liable for the damages its actions caused to Bodie.

## G. NINTH CLAIM FOR RELIEF—FOR DECLARATORY AND INJUNCTIVE RELIEF.

The Ninth Claim for relief allows the Court, sitting in equity, to do equity with respect to the matters and parties before the Court.  This claim imposes no burdens to maintain and provides maximum flexibility in achieving a just result.

CORRIGAN & MORRIS, LLP
ATTORNEYS AT LAW
12300 WILSHIRE BOULEVARD
SUITE 210
WEST LOS ANGELES, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 24

Only if all other claims for relief are dismissed without prejudice should the Court entertain dismissing the claims for equitable relief stated as the Ninth Claim for Relief in the FAC.

## H. IF ANY PART OF MOTION IS GRANTED, LEAVE TO AMEND CURABLE DEFICIENCIES SHOULD BE GRANTED.

"A district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading *could not possibly cure the deficiency* . . . or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). Emphasis added. A claim may be dismissed with prejudice only if "amendment would be futile.*" Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (citing *Albrecht v. Lund*, 845 F.2d 193, 197 (9th Cir. 1988)).

Plaintiff is unaware of any deficiency. This is the first Motion to Dismiss considered by the Court in this case. If the Court perceives a deficiency, unless that deficiency would be impossible to cure, the Court must grant leave to amend the First Amended Complaint.

## IV.   CONCLUSION.

For the foregoing reasons, and based on the Declarations of Brian T. Corrigan and Yakov Bodenstein, at DE 24 and 25, the Declaration of Brian T. Corrigan filed herewith, and exhibits thereto, the Motion should be denied in its entirety.


Dated:  February 23, 2018          **CORRIGAN & MORRIS LLP**


/s/ Brian T. Corrigan
12300 Wilshire Boulevard, Suite 210
Los Angeles, CA 90025
Tel: 310.394.2829
Fax: 310.394.2825
*Attorneys for* Plaintiff

**Corrigan & Morris, LLP**
Attorneys At Law
12300 Wilshire Boulevard
Suite 210
West Los Angeles, CA 90025

OPPOSITION TO PACIFIC'S MOTION TO DISMISS - 25